UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BENNY T. WARR and NINA M. WARR,

               Plaintiffs,

      v.

ANTHONY R. LIBERATORE, et al.,

               Defendants.
_____

DECISION & ORDER

13-CV-6508P

## PRELIMINARY STATEMENT

Pending are the parties' cross-motions for partial reconsideration of the September 5, 2017, decision of United States District Judge Elizabeth A. Wolford (Docket # 102) (the "Decision") granting in part and denying in part defendants' motion for summary judgment. (Docket ## 104, 107). Subsequent to the filing of the motions, the parties consented to the disposition of this case by a United States magistrate judge, pursuant to 28 U.S.C. § 636(c). (Docket # 116).

In the Decision, certain of the claims asserted by plaintiffs Benny T. Warr ("Warr") and Nina M. Warr in their Complaint were dismissed, and others were permitted to proceed. As a result, those that remain for trial are the following: (1) the false arrest claim by Warr against Officers Anthony R. Liberatore ("Liberatore") and Joseph M. Ferrigno, II ("Ferrigno") and Sergeant Mitchell R. Stewart, II ("Stewart") (Count I); (2) the excessive use of force claim by Warr against Officers Liberatore and Ferrigno and Sergeant Stewart (Count II); (3) the supervisory liability claim by Warr against former Rochester Police Chief James M. Sheppard ("Sheppard") (Count V); (4) the assault claim by Warr against Officers Liberatore and

Ferrigno, Sergeant Stewart, and the City of Rochester (Count VII); (5) the battery claim by Warr against Officers Liberatore and Ferrigno, Sergeant Stewart, and the City of Rochester (Count VI); and (6) the loss of consortium claim by Nina Warr against all defendants (Count IX). (Docket # 102 at 27). The claims arise out of Warr's arrest by Rochester Police Department officers on May 1, 2013, the circumstances of which are detailed in the Decision (Docket # 102 at 2-3), and will be repeated herein only as necessary.

The cross-motions are limited in scope. Defendants' motion seeks reconsideration of the Decision's denial of summary judgment to defendant Sheppard on the supervisory liability claim against him (Docket # 104); plaintiffs' motion seeks reconsideration of the Decision's grant of summary judgment to the City on the *Monell* claim against it (Docket # 107). In a supplemental memorandum of law dated November 8, 2017, defendants also argue that the Decision's denial of summary judgment on plaintiffs' false arrest claim should be reconsidered and reversed. (Docket # 111). Plaintiffs oppose that application. (Docket # 112).

For the reasons explained below, reconsideration of the Decision is not warranted. The parties' cross-motions are denied.

## DISCUSSION

**I.     Standard of Review**

"While the Federal Rules of Civil Procedure do not expressly provide for a motion to 'reconsider' a prior order," *Crespo v. Cty. of Monroe*, 2015 WL 4761638, *1 (W.D.N.Y. 2015), "[m]otions for reconsideration may be filed under Federal Rules of Civil Procedure 59(e), 54(b), or 60(b)," *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, *3 (E.D.N.Y. 2008). In this case, because the Decision did not result in an appealable final

2

judgment, Rule 54(b) governs this motion for reconsideration.[1] *See United States v. 228 Acres of Land & Dwelling*, 916 F.2d 808, 811 (2d Cir. 1990) ("[a]n order that denies summary judgment or grants partial summary judgment cannot by itself be the basis for an appeal, since it is nonfinal"), *cert. denied*, 498 U.S. 1091 (1991); *Micolo v. Fuller*, 2017 WL 2297026, *1 n.1 (W.D.N.Y. 2017) ("[t]he Decision and Order [granting in part and denying in part the defendant's motion for summary judgment] is not a final decision, and no judgment has been entered in this case[;] [t]hus, the motion [for reconsideration] cannot be one under [Rules] 59(e) or 60(b)").

Rule 54(b) applies to motions seeking reconsideration of interlocutory decisions. It provides, among other things, that an order or decision "that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." FED. R. CIV. P. 54(b). In other words, under Rule 54(b), "the [c]ourt has inherent power to reconsider any of its own entries prior to the entry of a judgment adjudicating all the claims." *Blond v. Leonard*, 277 F. Supp. 3d 420, 423 (W.D.N.Y. 2017).

The Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm. of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). Motions for reconsideration will generally be

---

[1] Rules 60(b) and 59(e) pertain to final judgments and orders. Rule 60(b) concerns reconsideration of a "final judgment, order, or proceeding." FED. R. CIV. P. 60(b). Rule 59(e) relates to alterations or amendments of a "judgment," FED. R. CIV. P. 59(e), which is defined under the Federal Rules as a "decree and any order from which an appeal lies," FED. R. CIV. P. 54(a).

denied unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820 (1992). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Boyde v. Osborne*, 2013 WL 6662862, *1 (W.D.N.Y. 2013) (quotation omitted). Importantly, "[a] party may not use a motion for reconsideration to advance theories of relief or facts that were not previously presented to the court." *Harris v. Millington*, 613 F. App'x 56, 58 (2d Cir. 2015) (summary order).

## II. Sheppard's Motion to Reconsider the Court's Supervisory Liability Ruling

As noted above, former Chief of Police James Sheppard seeks reconsideration of Judge Wolford's decision to deny summary judgment on the supervisory liability claim against him. (Docket # 104). Specifically, he argues that "the Court's ruling is inconsistent with the prevailing standard, particularly with respect to proximate cause, and imposes an unfair burden on administrators to answer in lawsuits for post-incident reviews of one-time, non-continuing occurrences involving a plaintiff." (Docket # 104-1 at ¶ 8).

"Supervisory liability is a concept distinct from municipal liability, and is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision or control of his subordinates." *Rogoz v. City of Hartford*, 2012 WL 4372189, *8 (D. Conn. 2012) (quotations omitted). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, "[i]t is not

4

enough to show that a defendant ultimately supervised those who allegedly violated plaintiff's [c]onstitutional rights." *Id.* at 542 (quotation omitted). Instead, "to sustain a section 1983 claim against a supervisory official in his individual capacity, the plaintiff must allege and demonstrate that the official was personally involved in the alleged constitutional violation." *Pierce v. Ottoway*, 2009 WL 749862, *5 (W.D.N.Y. 2009) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)). According to the Second Circuit, a supervisory defendant may be shown to have been personally involved in a constitutional violation through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuation of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[2]

In this case, in their motion papers seeking judgment in favor of Sheppard on the supervisory liability claim, defendants summarily asserted:

> None of the [above-identified] requirements for imposing liability against James Sheppard . . . are present on this record. Accordingly, plaintiffs have failed to show any evidence of either a constitutionally violative policy or deliberate indifference to known risks posed by [Sheppard].

(Docket # 88-1 at 21). Plaintiffs opposed the motion on the grounds that:

---

[2] "Courts in this Circuit are 'divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983' following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Holmes v. Capra*, 2018 WL 3117511, *3 (S.D.N.Y. 2018) (quoting *Allah v. Annucci*, 2017 WL 3972517, *6 (S.D.N.Y. 2017)). However, "[t]he Second Circuit has not squarely address how *Iqbal* . . . affects the standards in *Colon* for establishing liability." *Holmes v. Capra*, 2018 WL 3117511 at *3 n.4. In light of the absence of authority commanding otherwise, the Court will continue to apply and analyze the five theories of liability announced in *Colon*. *See*, *e.g.*, *Johnson v. Fischer*, 2011 WL 6739520, *2 n.1 (N.D.N.Y. 2011) ("the court, until instructed to the contrary, continues to apply the five factor *Colon* test").

> Defendant Sheppard failed to take corrective action after learning
> of the Defendant Officers' misconduct since he upheld their
> exonerations in his Police Chief Review. Defendant Sheppard
> supported the policy of 'Clearing the Block' which caused Warr's
> civil rights violations, he was grossly negligent i[n] supervising the
> Defendant Officers who had prior misconduct histories and
> absolutely no training regarding the arrest of a wheel chaired
> person and he showed deliberate indifference to the rights of Warr
> and others by failing to act on the Defendant Officers' conduct.
> Rather, Defendant Sheppard went on [the radio] after Warr was
> assaulted and proudly [s]howed support for the policy 'Clearing
> the Block' and the Defendant Officers' actions.

(Docket # 92 at 19-20). Defendants did not address these arguments in reply. (*See generally* Docket # 98).

On this record, Judge Wolford denied Sheppard's motion for summary judgment. She reasoned that the record included evidence that Sheppard learned of the alleged constitutional violations through Warr's complaint that he was subjected to excessive use of force during the incident, which he personally reviewed as the Chief of Police, and purportedly failed to remedy the alleged wrong:

> Following the incident, Warr filed a complaint against Ferrigno
> and Liberatore alleging excessive use of force. According to
> Defendants, Sheppard was involved in reviewing Warr's
> complaint. Consequently, Sheppard had actual notice of the
> violation. The RPD's review of Warr's complaint – which
> included Sheppard's own review – exonerated Ferrigno and
> Liberatore. Thus, Sheppard was informed of a potential violation
> of Warr's constitutional rights by Ferrigno and Liberatore, and
> failed to right the alleged wrong, despite having the opportunity to
> do so through the complaint review process. These circumstances
> give rise to the potential for § 1983 supervisory liability, and, as
> such, summary judgment is inappropriate.

(Docket # 102 at 22-23) (citations omitted). Judge Wolford also concluded, "[t]o the extent that Warr claims supervisory liability based on the 'prior misconduct histories' of Ferrigno and

6

Liberatore (*see* Dkt. 92 at 20)[,] . . . Warr has submitted no evidence of any such history." (*Id.* at 22 n.4).

Sheppard now claims that Judge Wolford's decision "has no support in law." (Docket # 104-2 at 3). Sheppard argues that his "knowledge of Warr's alleged constitutional violations by way of his review of Warr's complaint, filed after the subject police encounter, cannot be said to be the moving force or proximate cause behind that encounter, as Sheppard could not have prevented an incident that had already occurred." (*Id.* at 2). In support of his argument, Sheppard relies on one out-of-district decision, *Blot v. Town of Colonie*, 2017 WL 61943 (N.D.N.Y. 2017), for the proposition that a supervisory official cannot be found to have been personally involved in a constitutional violation on the basis that he failed to take remedial action where the constitutional violation has "ended and c[annot] be stopped by [the supervisory] [d]efendant . . . by the time [the supervisory] [d]efendant[] learned of the violations." *Blot v. Town of Colonie*, 2017 WL 61943 at *21. Here, Sheppard maintains, the alleged constitutional violations – false arrest and excessive use of force – arose from a single, non-continuing incident that Sheppard, by the time he found out about it, could not have remedied or corrected.

I find that Sheppard has not satisfied the "high standard necessary to justify reconsideration of" the denial of summary judgment. *Micolo v. Fuller*, 2017 WL 2297026 at *3. First, it is well-settled that "[a] party may not use a motion for reconsideration to advance theories of relief . . . that were not previously presented to the court." *Harris v. Millington*, 613 F. App'x at 58. Here, Sheppard failed to raise before Judge Wolford the specific argument that he makes now. As noted above, defendants' entire argument in support of the motion for judgment dismissing the supervisory liability claim consisted of two conclusory sentences. Significantly, despite plaintiffs' reliance in their opposition papers on the second prong in *Colon*

7

for the imposition of supervisory liability, defendants' memorandum did not address that contention. Sheppard's failure to address before Judge Wolford plaintiffs' argument for supervisory liability forecloses his right to rely on it now as a justification for reconsideration. *See Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 155 (E.D.N.Y. 2014) ("arguments raised for the first time on reconsideration are not proper grounds for reconsideration"). On this basis alone, reconsideration is not warranted.[3]

        Alternatively, reconsideration is inappropriate because defendants have failed to demonstrate that Judge Wolford's ruling is either clearly erroneous or manifestly unjust. The Court is cognizant of the existence of some authority holding that supervisory officials cannot be liable for failing to remedy a constitutional violation that has ceased by the time the supervisor learns of it. *See*, *e.g.*, *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("[r]eceiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered . . . [;] [t]herefore, a supervisor may be liable for [his] failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it"); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("[i]t has been held that an appropriate guiding principle for determining personal responsibility is where a grievance alleges an ongoing constitutional violation, the supervisory official who reviews the grievance is personally involved if he is confronted with a situation that he can remedy directly[;] [i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation") (citations and

---

[3] For the same reason, reconsideration of Judge Wolford's denial of summary judgment on Warr's false arrest claim is also inappropriate. (*See* Docket # 111). Defendants did not raise that argument before Judge Wolford; indeed, they did not even raise it in their initial memorandum of law for reconsideration. Accordingly, the Decision's denial of summary judgment on that claim will not be reconsidered.

8

quotations omitted); *Odom v. Calero*, 2008 WL 2735868, *7 (S.D.N.Y. 2008) ("[t]he reference in case law to an official who 'fails to remedy' a violation logically applies only to ongoing, and therefore correctable, constitutional violations – not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded"). That caselaw, however, is not binding; nor is the authority on that issue uniform.

Rather, "[c]ourts in this [Circuit] are *split* as to whether review and denial of a grievance constitutes personal involvement in the underlying allegedly unconstitutional conduct." *Braxton v. Nichols*, 2010 WL 1010001, *9 (S.D.N.Y. 2010) (emphasis supplied) (recognizing the "uncertainty in the law" on this issue); *accord Saxon v. Attica Med. Dep't*, 468 F. Supp. 2d. 480, 483 (W.D.N.Y. 2007) ("[t]here is authority from within this circuit that a supervisor's mere denial of a grievance is insufficient to establish personal involvement[;] [t]he caselaw on that question is not uniform, however"). As the court in *Braxton* observed,

> [s]ome court have dismissed claims founded on the denial of a grievance; some courts have found personal involvement where a grievance adjudicator investigated the prisoner's complaint; others have made a distinction between a *pro forma* denial and a detailed response to a grievance; and still others have decided that personal involvement may be found where the grievance alleges an 'ongoing' constitutional violation such that the supervisory official who reviews the grievance can remedy [it] directly.

*Braxton v. Nichols*, 2010 WL 1010001 at *9 (citations and quotations omitted). *See also Thomas v. Calero*, 824 F. Supp. 2d 488, 506 (S.D.N.Y. 2011) ("the degree of the supervisor's required involvement, in learning of the violation and then failing to remedy the wrong – which is required by the second [*Colon*] factor – is still not entirely clear").

In this case, Judge Wolford determined that Sheppard's personal review of Warr's complaint was sufficient to put him on notice of the alleged unconstitutional conduct and afforded him the opportunity to "right the alleged wrong," which he allegedly failed to do.

9

(Docket # 102 at 23). Considering the split in authority discussed above, defendants have not demonstrated that Judge Wolford's decision is clearly erroneous and deserves reconsideration. Defendants' motion for reconsideration is denied on this basis as well.[4]

Of course, whether plaintiffs will be able to prove their claim against Sheppard at trial remains to be seen. Plaintiffs will have to explain how, considering the circumstances of this case, Sheppard could have remedied the alleged constitutional violations when he learned of the May 1, 2013, incident. This decision should not be construed as any opinion on plaintiffs' ability to shoulder their trial burden.

III. **Plaintiffs' Motion to Reconsider the Court's *Monell* Ruling**

Plaintiffs seek reconsideration of Judge Wolford's determination to dismiss the *Monell* claim against the City of Rochester. (Docket # 107). Plaintiffs' principal contention is that Judge Wolford "overlooked" proof – namely, the City's "Clearing the Block" policy – sufficient to raise a disputed issue of fact with respect to their *Monell* claim. (Docket # 107-1 at ¶ 18).

---

[4] Plaintiffs also maintain that Sheppard could be held liable under the third *Colon* theory because "he allowed the longstanding 30 year City policy 'Clearing the Block,' under which unconstitutional practices allegedly occurred, to continue and this policy was utilized in the unlawful arrest of [Warr] and caus[ed] him constitutional harm." (Docket # 107-1 at ¶ 34). The Decision did not explicitly address this contention, presumably because it was not clearly articulated. Even construing their memorandum to include the argument, plaintiffs have failed to present evidence that earlier similar incidents occurred pursuant to the "Clearing the Block" policy. *See*, *e.g.*, *Casey v. Brockley*, 2018 WL 1399244, *8-9 (N.D.N.Y.) (granting summary judgment to supervisory defendant where plaintiff failed to produce evidence of defendant's personal involvement in the underlying incident under the third *Colon* factor[;] "[b]eyond conclusory allegations or assertions of 'general rumors,' [p]laintiff has not provided evidence of similar events occurring prior to the [incident at issue][;] [i]nstead, [p]laintiff provided a list of incidents that occurred in a sixty day period, *after* the incident [at issue][;] [s]uch evidence sheds no light on [supervisor's] actions or conduct in creating or permitting a policy or custom of excessive force . . . which resulted in the [challenged] incident"), *report and recommendation adopted*, 2018 WL 1393787 (N.D.N.Y. 2018). Thus, even if this argument had been before Judge Wolford (which is not at all clear), plaintiffs have failed to demonstrate that Judge Wolford overlooked evidence that could have resulted in a different decision. Reconsideration is not warranted.

As the Decision correctly recognized, "[i]n order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal 'policy or custom' from which the alleged injury arose." (Docket # 102 at 19) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).

> A plaintiff may satisfy the "policy or custom" requirement by alleging that existence of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; and (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

(Docket # 102 at 19-20) (quoting *Perrone v. O'Flynn*, 2015 WL 7776930, *5 (W.D.N.Y. 2015)). Plaintiffs maintain that the "Clearing the Block" policy satisfies the first *Monell* prong – the existence of a formal policy officially endorsed by the City. (Docket # 107-1 at ¶ 19). In addition, plaintiffs claim the City failed to provide adequate training to its officers concerning arrest procedures for persons in wheelchairs or with disabilities and that the lack of training amounted to deliberate indifference to the rights of such persons, which would satisfy the fourth *Monell* prong. (*Id.* at ¶ 20).

In their motion for summary judgment (which did not mention the "Clearing the Block" policy), defendants argued that plaintiffs' *Monell* claim should be dismissed because "unsubstantiated civilian complaint records of both named and unnamed police officers" could not establish "unlawful practices and/or deliberate indifference by the Rochester Police Department." (Docket # 88-1 at 19). Plaintiffs' opposition was remarkably brief, included no analysis of caselaw, and failed to cite any record evidence except one paragraph of defendants'

11

Statement of Undisputed Facts. (Docket # 92 at 19). Indeed, the entirety of plaintiffs' analysis of the evidence supporting their *Monell* claim was contained in one paragraph:

> Warr's Monell claim arises from his arrest pursuant to the 'longstanding City policy of Clearing the Block in high crime areas known for violence, drug dealing, trespassing, and numerous citizen complaints involving crime and quality of life issues.' (See paragraph 51, Defendants' Statement of Undisputed Facts). The conduct of the Defendant officers is sufficiently brutal or egregious as to suggest deliberate indifference by the City of Rochester. As for prior complaints against the Defendant Officers, numerous complaints have been disclosed in this litigation which alerted RPD management of Defendants Ferrigno's and/or Liberatore's unfitness to be employed as police officers. Plaintiffs['] police expert Michael Levine reviewed these complaints which form the basis of his opinions set forth in his report and which will be given at trial.

(*Id.*).

Contrary to plaintiffs' suggestion in the pending motion, Judge Wolford's decision addressed these very arguments. (Docket # 102 at 20-21) ("Here, Warr first argues that summary judgment is inappropriate because Ferrigno and Liberatore's conduct was 'sufficiently brutal or egregious as to suggest deliberate indifference by the City.' . . . Warr next argues that the City was on notice as to the officers' 'unfitness to be employed as police officers' because of prior complaints about their conduct.'"). As Judge Wolford explained, she "easily rejected" plaintiffs' first argument because it "merely s[ought] to make the City liable through *respondeat superior* . . . [and] d[id] not present a pattern of conduct nor any formal policy perpetrated by the City to establish *Monell* liability." (*Id.* at 20). Rejecting the second argument, Judge Wolford held that plaintiffs "failed to sufficiently oppose" defendants' motion because plaintiffs "submitted *no evidence* of prior complaints" against Officers Ferrigno and Liberatore, and their expert's report demonstrated "no foundation for any opinion regarding prior complaints." (*Id.* at 20-21) (emphasis in original).

12

Pressing for reconsideration, plaintiffs now argue that the City was deliberately indifferent by failing to train Rochester Police Department officers on arrest procedures for persons in wheelchairs or with disabilities. (Docket # 107-2 at 5). Once again, this argument does not warrant reconsideration of the dismissal because it was not raised before Judge Wolford. (*See* Docket # 92 at 16-19).

Likewise, their contention that the "Clearing the Block" policy satisfies the first *Monell* prong was not argued before Judge Wolford. Judge Wolford reasonably construed plaintiffs' *Monell* argument to be grounded in the fourth *Monell* prong. Nowhere in their opposition papers did plaintiffs argue that the "Clearing the Block" policy was facially unconstitutional;[5] rather, Judge Wolford addressed, and rejected, the argument that they did make – that the City was deliberately indifferent to (1) the obvious consequences of its policy as evidenced by the particular brutality and egregiousness of Liberatore's and Ferrigno's treatment of Warr and (2) prior complaints about the conduct of Liberatore and Ferrigno that demonstrated their unfitness to be police officers. *See Am. Fed. of Labor & Congress of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) ("[i]f a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish 'that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences'") (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)); *see also Faccio v. Eggleston*, 2011 WL 3666588, *14 (N.D.N.Y. 2011) ("a plaintiff must establish that a violation of his constitutional rights resulted from a municipal custom or practice[;] [t]his policy must be either facially unconstitutional or unconstitutional as applied

---

[5] Plaintiffs made one only passing reference to "Clearing the Block" in the section of their memorandum opposing defendants' *Monell* motion; that reference in a single sentence simply noted that Warr's arrest was made pursuant to the policy. (*See* Docket # 92 at 19).

13

because of the municipality's deliberate indifference to the rights of persons with whom municipal employees may encounter") (citations and quotations omitted). On this record, plaintiffs have not shown that Judge Wolford's *Monell* determination was clearly erroneous or that reconsideration is required to prevent manifest injustice. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d at 1255.

Finally, plaintiffs' contention that Judge Wolford "overlooked Count V of Plaintiffs' Complaint . . . which alleged the official policy or custom of 'Operation Cool Down,' 'Clearing the Block' and/or 'Clearing the Street'" does not warrant a different result. (Docket # 107-2 at 3). A plaintiff may not defeat summary judgment by reliance on their pleadings. *See Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (a party opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements"). Rather, a plaintiff is required to "come forward with materials envisioned by [Rule 56], setting forth specific facts showing that there is no genuine issue of material fact to be tried." *Id*.

## CONCLUSION

For these reasons, the parties' cross-motions for partial reconsideration of the Decision **(Docket ## 104, 107)** are **DENIED**. A **trial date status conference** will be held with the undersigned on **July 31, 2018**, at **10:00 a.m.**

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
July 3, 2018

14