UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BENNY T. WARR and NINA M. WARR,

                           Plaintiffs,

             v.

ANTHONY R. LIBERATORE,

                          Defendant.

_____

DECISION & ORDER

13-CV-6508P

## PRELIMINARY STATEMENT

Plaintiffs Benny T. Warr ("Warr") and Nina M. Warr (collectively, "plaintiffs") commenced this action on September 19, 2013, against three Rochester Police Department ("RPD") officers, Anthony R. Liberatore ("Liberatore"), Joseph M. Ferrigno, II ("Ferrigno"), and Mitchell R. Stewart, II ("Stewart"), and the City of Rochester (collectively, "defendants") asserting claims pursuant to 42 U.S.C. § 1983 and New York State law for injuries arising from Warr's arrest on May 1, 2013.[1]  (Docket # 1).  On December 4, 2017, the parties consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docket # 116).

Following an eleven-day jury trial, the jury returned a verdict in favor of all individual defendants on Warr's claims for unlawful arrest, assault, and battery, and in favor of

---

[1] Former RPD Chief James M. Sheppard ("Sheppard") was also named as a defendant in the action, but was granted judgment as a matter of law and dismissed from the action following plaintiffs' presentation of their case-in-chief, pursuant to Rule 50 of the Federal Rules of Civil Procedure.  (Docket # 141).

defendants Ferrigno and Stewart on Warr's claim for excessive force.[2]  (Docket # 148 at ¶¶ 1-3, 5-11).  The jury determined that Liberatore was liable on Warr's Section 1983 claim for excessive force against him.  (*Id.* at ¶ 4).  Currently pending is Liberatore's motion for judgment in his favor on that claim on the grounds of qualified immunity.[3]  (Docket ## 152, 153, 155).[4]  For the reasons discussed below, the Court denies Liberatore's motion.

## FACTUAL BACKGROUND

This lawsuit arises out of the May 1, 2013 arrest of Warr, a heavyset man who uses a wheelchair and a left leg prosthesis as a result of an above-the-knee amputation, at the intersection of Jefferson Avenue and Bartlett Street in the City of Rochester.  The altercation between the officers and Warr arose from their direction to certain persons in the vicinity to disperse (contrary to Warr's testimony, the officers testified that the group to whom the order

---

[2]  Judgment was also entered in favor of the City of Rochester (Docket # 149) because the only claims against the City (the tort claims) were premised on the doctrine of vicarious liability.

[3]  Liberatore's motion also seeks to "appreciably reduce[] or wholly preclude[]" any attorney's fees requested by Warr's counsel that "approach the ceiling of $35,000" (the amount offered in defendants' Offer of Judgment pursuant to Fed. R. Civ. P. 68).  (Docket # 152-1 at 4).  Although plaintiffs have filed a motion seeking sanctions in the form of, among other things, attorney's fees incurred in the event of a new trial (Docket # 158), plaintiffs have not otherwise applied for attorney's fees.  Accordingly, this portion of Liberatore's motion is denied as premature.

[4]  After the jury returned its verdict, Liberatore orally moved for judgment on the grounds of qualified immunity.  (Docket # 147).  By order dated February 6, 2019, the Court directed Liberatore to make any such motions in writing on or before March 4, 2019.  (Docket # 150).  Liberatore filed the pending motion the next day, February 7, 2019.  (Docket # 152).  On February 8, 2019, Liberatore filed an almost identical set of motion papers seeking the same relief.  (*Compare* Docket # 152 *with* Docket # 153).  On February 24, 2019, without permission from the Court, Liberatore supplemented his pending motion with an additional memorandum of law, and then replaced that submission with a "corrected" version.  (Docket ## 154, 155).  Despite the multiple submissions, Liberatore's qualified immunity argument is surprisingly brief, particularly given the length of the trial.  All told, Liberatore's posttrial briefs total only ten pages, approximately six of which are addressed to the qualified immunity analysis.  The Court has reviewed and considered all of Liberatore's submissions.

was directed included Warr) and culminated in his arrest for disorderly conduct.[5] During the arrest, which the jury found that Warr resisted, Ferrigno deployed a burst of pepper spray (oleoresin capsicum) and Liberatore turned over Warr's wheelchair to force him to the ground, after which Ferrigno used several knee strikes to Warr's abdominal area and Liberatore struck him in the head with his elbow. After Warr was handcuffed, he was transported by ambulance to the hospital for evaluation and treatment of his claimed injuries. Warr's encounter with the officers lasted approximately ten minutes, and the conduct that plaintiffs alleged constituted excessive force occurred over the course of approximately two minutes during that period. Much of the conduct, but not all, was captured by two video recordings.

At trial, both sides offered eyewitness testimony. Warr himself testified as to the events that led to his arrest, the circumstances of his arrest, and his claimed injuries resulting therefrom. Plaintiffs also offered testimony from Derrick Latham, Tache Young ("Young"), and Mary Adams, who witnessed some or all of the encounter between Warr and the defendants. Defendants Liberatore, Ferrigno and Stewart testified as to their versions of the events. The two video recordings of the encounter and arrest were also introduced into evidence, one of which was recorded by a blue light camera near the location of the arrest (the "blue light video"), and the other of which was recorded by Young on a cellular phone (the "cellphone recording"). The cellphone recording contains audio; the blue light video does not.

At the conclusion of the trial, the jury was provided with a verdict form on which to record its verdict on the claims against Liberatore, Ferrigno, and Stewart. (Docket # 148). The jury found that Warr failed to establish that he had been unlawfully arrested, or that

---

[5] After Warr was handcuffed, he was transported by ambulance to Strong Memorial Hospital. At the hospital, Ferrigno and Liberatore issued Warr appearance tickets for disorderly conduct and resisting arrest under N.Y. Penal Law §§ 240.20 and 205.30, respectively.

Liberatore, Ferrigno or Stewart had committed the torts of assault or battery against him. (*Id.* at ¶¶ 1-2, 6-11). The jury also found that Warr had not established that Ferrigno or Stewart had subjected him to excessive force during his arrest. (*Id.* at ¶¶ 3, 5). With respect to Liberatore, however, the jury found that he had subjected Warr to excessive force in violation of the Fourth Amendment. (*Id.* at ¶ 4). The jury awarded Warr nominal damages of $1.00, but no compensatory damages. (*Id.* at ¶¶ 12-13). The jury answered "yes" to the question, "do you find that punitive damages should be awarded against [Liberatore] for the . . . claim[] [of] [e]xcessive [f]orce," but, in response to a subsequent question, determined that the amount of punitive damages to be awarded was $0.00. (*Id.* at ¶ 16).

After the verdict, Liberatore moved for judgment as a matter of law on the basis of qualified immunity. (Docket # 147). In accordance with the procedure set forth in *Stephenson v. Doe*, 332 F.3d 68, 80-81 (2d Cir. 2003), and with input from the parties, the jury was directed to deliberate upon and answer a set of written special interrogatories (the "Special Interrogatories"). (Docket # 148-1).

As reflected in its responses to the Special Interrogatories, the jury found that Warr resisted arrest while he was seated in his wheelchair by flailing his arms, but that he did not ever strike Ferrigno or Liberatore (contrary to Ferrigno's testimony that Warr struck him). (*Id.* at ¶ 3). The jury also found that Liberatore and Ferrigno attempted to use other force techniques before turning over Warr's wheelchair, including grabbing his arms.[6] (*Id.* at ¶ 4). The jury concluded that members of the public did not yell at the officers before Warr's wheelchair was turned over and that Liberatore did not reasonably fear for his safety at that time. (*Id.* at ¶¶ 1-2).

---

[6] The trial testimony was undisputed that Ferrigno deployed a burst of pepper stray while Warr was in his wheelchair and employed knee strikes to his abdomen when Warr was on the ground before he was handcuffed.

The jury further determined that after Warr's wheelchair was overturned, a crowd or public disturbance was present in the vicinity, which included members of the public who were yelling at the officers, and that Liberatore reasonably feared for his safety at that time. (*Id.* at ¶¶ 5-7). The jury found that Warr continued to resist arrest while he was on the ground, but that he did not flail his arms or tuck his hands under his body (contrary to Liberatore's and Ferrigno's testimony). (*Id.* at ¶ 8). Finally, the jury concluded that the officers did not use any force on Warr after he was handcuffed. (*Id.* at ¶ 9).

## DISCUSSION

Liberatore maintains that he is entitled to judgment in his favor on the excessive force claim, notwithstanding the jury's verdict against him, on the grounds of qualified immunity.[7] He claims he is entitled to qualified immunity based upon two discrete contentions: first, that the conduct for which he was found liable was reviewed through various internal and external procedures, including review by RPD's Professional Standards Section ("PSS"), his supervisor Stewart, RPD Chief Sheppard, RPD use of force instructor Andrew J. McPherson ("McPherson"), and the Civilian Review Board ("CRB") – which exonerated him of excessive force (Docket # 152-1 at 1-3); second, that the jury's conclusions that he did not commit a battery and that Warr was entitled to nominal damages only are consonant with a finding of

---

[7] Plaintiffs also filed posttrial motions. (Docket # 158). They were directed to supplement their submissions with citations to the trial transcript. (Docket # 166). Because Liberatore's motion seeks qualified immunity on fairly narrow grounds, I find that I can resolve the motion without review of the trial transcript. *See Johnson v. Greiner*, 2007 WL 2844905, *9 (S.D.N.Y. 2007) ("defendants' failure to make more than boilerplate arguments in their motion papers, compounded by their further failure to relate those arguments to the factual record in this case, justifies the conclusion that defendants are not entitled to . . . qualified immunity[;] . . . this [c]ourt is not required, *sua sponte*, to develop, analyze, and rule on arguments where defendants have offered none"); *see also Vanderwoude v. City of New York*, 2014 WL 5139341, *3 n.5 (S.D.N.Y. 2014) ("[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity") (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997)).

qualified immunity (Docket # 155 at 1-4).  As explained below, neither of these arguments

presents a basis on which to grant judgment on the grounds of qualified immunity.


I.      **Legal Standards**

        A.      **Excessive Force**

        Claims arising from the use of force during an arrest are judged by the "objective

reasonableness" standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 397

(1989).  Determination of whether the amount of force used to seize someone was reasonable

"requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests as stake."  *Id.* at 396

(internal quotations omitted).

        Courts have long recognized that a police officer's right to make an arrest or

investigatory stop "necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it."  *Id.*  "Because the test of reasonableness under the Fourth Amendment

is not capable of precise definition or mechanical application, . . . its proper application requires

careful attention to the facts and circumstances of each particular case, including the severity of

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

(internal citation and quotations omitted).  A police officer's application of force is excessive if it

is objectively unreasonable "in light of the facts and circumstances confronting [the officer],

without regard to [the officer's] underlying intent or motivation."  *Id.* at 397.

        Evaluation of the use of force "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  At

the same time, "[u]nder the law, police are not permitted to use any degree of force in all instances – in some circumstances, no use of force is reasonable because none is required." *Weather v. City of Mount Vernon*, 2011 WL 1046165, *9 (S.D.N.Y. 2011), *aff'd*, 474 F. App'x 821 (2d Cir. 2012). Accordingly, the actions of the officers must be assessed in the context of the circumstances confronting the officer, and a defendant may be liable if "the force used exceeded the force needed for the factual circumstances." *Graham v. City of New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013). Where an arrestee is resisting arrest, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Liability may attach where the circumstances of the encounter suggest that the officer "gratuitously inflict[s] pain in a manner that [is] not a reasonable response to the circumstances." *Phelan v. Sullivan*, 541 F. App'x 21, 25 (2d Cir. 2013) (alterations in original) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 124 (2d Cir. 2004)); *Lemmo v. McKoy*, 2011 WL 843974, *6 (E.D.N.Y. 2011) ("although the *Graham* test does not consider the subjective intent of the officer(s) per se, . . . intentional, gratuitous uses of force that are not required to subdue an individual likely fail the *Graham* objective unreasonableness test").

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[q]ualified immunity attaches when an official's conduct does not violate clearly

7

established statutory or constitutional rights of which a reasonable person would have known")
(internal quotations omitted). In determining whether a defendant is entitled to qualified
immunity, courts must evaluate (1) whether the facts establish that the defendant violated
plaintiff's constitutional right and (2) "whether the right at issue was 'clearly established' at the
time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. at 232 (quoting *Saucier
v. Katz*, 533 U.S. 194, 201 (2001)).

The question whether a right is clearly established turns on "whether it would be
clear to a reasonable officer that his conduct was unlawful in the situation he confronted."
*Saucier v. Katz*, 533 U.S. at 202. In other words, "[a] clearly established right is one that is
'sufficiently clear that every reasonable official would have understood that what he is doing
violates that right.'" *Mullenix v. Luna*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S.
658, 664 (2012)). Thus, qualified immunity provides a broad shield for "all but the plainly
incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S.
335, 341 (1986)). "Specificity is especially important in the Fourth Amendment context, where
the Court has recognized that it is sometimes difficult for an officer to determine how the
relevant legal doctrine, here excessive force, will apply to the factual situation the officer
confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Mullenix*, 136 S. Ct. at
308).

## II. <u>Application to Liberatore's Motion</u>

In this case, Liberatore maintains that he is entitled to qualified immunity because
his conduct withstood RPD internal and external review procedures[8] and because the jury's

---

[8] Chief Sheppard did not determine that Liberatore was "exonerated" for using an elbow strike to Warr's head; rather, he found that the allegation was "unprovable." (Trial Exhibit ("Tr. Ex.") 43).

established statutory or constitutional rights of which a reasonable person would have known")
(internal quotations omitted). In determining whether a defendant is entitled to qualified
immunity, courts must evaluate (1) whether the facts establish that the defendant violated
plaintiff's constitutional right and (2) "whether the right at issue was 'clearly established' at the
time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. at 232 (quoting *Saucier
v. Katz*, 533 U.S. 194, 201 (2001)).

The question whether a right is clearly established turns on "whether it would be
clear to a reasonable officer that his conduct was unlawful in the situation he confronted."
*Saucier v. Katz*, 533 U.S. at 202. In other words, "[a] clearly established right is one that is
'sufficiently clear that every reasonable official would have understood that what he is doing
violates that right.'" *Mullenix v. Luna*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S.
658, 664 (2012)). Thus, qualified immunity provides a broad shield for "all but the plainly
incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S.
335, 341 (1986)). "Specificity is especially important in the Fourth Amendment context, where
the Court has recognized that it is sometimes difficult for an officer to determine how the
relevant legal doctrine, here excessive force, will apply to the factual situation the officer
confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Mullenix*, 136 S. Ct. at
308).

## II. <u>Application to Liberatore's Motion</u>

In this case, Liberatore maintains that he is entitled to qualified immunity because
his conduct withstood RPD internal and external review procedures[8] and because the jury's

---

[8] Chief Sheppard did not determine that Liberatore was "exonerated" for using an elbow strike to Warr's head; rather, he found that the allegation was "unprovable." (Trial Exhibit ("Tr. Ex.") 43).

determinations that Warr did not establish that Liberatore committed a battery upon him and that Warr suffered only nominal damages, taken together, demonstrate that he neither intended to, nor did, harm Warr. (Docket ## 152-1, 155). I disagree.

As an initial matter, the outcomes of the RPD internal and external reviews of his conduct were based upon factual findings and credibility determinations made by the reviewers, some of which were explicitly stated and some of which were not, that do not parallel the findings made by the jury in all material respects. (*See*, *e.g.*, Docket # 152-2). For example, McPherson's conclusion that Liberatore's use of force was "reasonable and appropriate" was based upon seven findings of fact, one of which was that Warr "aggressively resist[ed] arrest by throwing punches and . . . mak[ing] contact with [RPD] members with those punches." (*Id.*). As the responses to the Special Interrogatories demonstrate, the jury concluded, to the contrary, that Liberatore failed to demonstrate that Warr punched either Ferrigno or him. (Docket # 148-1 at ¶ 3).

In addition, some of the reviews, such as those conducted by Sergeant Tordai ("Tordai") of the PSS and Chief Sheppard, do not make clear what factual findings underlie their determinations. Tordai's factual recitation contains a several-page summary of statements made by interested parties and eyewitnesses – much of which reflects sharp disputes about the events leading to and occurring during Warr's arrest. (Tr. Ex. 42 at 6-10). For example, Liberatore stated that after Warr was on the ground, he continued to resist arrest by "pull[ing] his arms under his body." (*Id.* at 8). Tordai's report does not reflect whether he credited Liberatore's account in this respect. If he did, such finding would conflict with the jury's finding reflected in its Special Interrogatories that Warr did not flail his arms or tuck them under his body when he was on the ground. (Docket # 148-1 at ¶ 8).

Certainly, as established caselaw makes clear, the extent to which, if at all, an arrestee presents a danger to the officers and the nature and degree of the arrestee's resistance to the arrest are important considerations in the context of analyzing whether qualified immunity applies to a challenged use of force. *See Betts v. Rodriquez*, 2017 WL 2124443, *4 (S.D.N.Y. 2017) ("the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances[,] . . . [including] whether the suspect poses an immediate threat to the safety of the officers or others . . . [and] whether he is actively resisting arrest or attempting to evade arrest by flight") (internal quotations omitted); *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 152 (N.D.N.Y. 2006) ("[i]n the context of qualified immunity, 'reasonable' requires the court to balance the same factors it considers in determining reasonable force under the Fourth Amendment: the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest"); *Bantum v. City of New York*, 2001 WL 705889, *2 (S.D.N.Y. 2001) (whether a defendant is entitled to immunity for the force used during an arrest "requires an analysis of a variety of factors including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest") (internal quotations omitted). However, it is the jury's factual conclusions regarding the disputed circumstances facing the officers – not those drawn by the internal and external reviewers – that must control the qualified immunity analysis, and Liberatore's argument does not appear to acknowledge the discrepancies between the jury's findings and the findings – whether explicit, implicit, or unstated – of the internal and external police reviewers.

Rather, Liberatore contends that he should be protected by qualified immunity because his conduct was exonerated during these procedures. His argument, if accepted, would compel a qualified immunity finding in any case in which a constitutional excessive force claim was premised on conduct that had been subject to internal or external investigative police review and determined not to amount to excessive force.[9] Simply stated, Liberatore "cannot bootstrap [his] way to qualified immunity by relying solely on . . . internal review[s] of the incident." *Mack v. Howard*, 2014 WL 2708468, *3 (W.D.N.Y. 2014).

Liberatore also contends that the jury's conclusion that Warr did not establish that Liberatore was liable for battery, coupled with its determination that Warr was entitled to nominal damages only, warrants a finding of qualified immunity. (Docket # 155). I disagree. As the caselaw upon which Liberatore relies demonstrates, the elements of battery and excessive force are not identical, and a finding of excessive force is not inconsistent with the conclusion that a battery did not occur. (Docket # 155 at 1-2 (citing *Brim v. City of New York*, 2016 WL 11263170, *3 (E.D.N.Y. 2016) ("a reasonable jury could have found in favor of [the officer] with regard to the assault and battery claims but for [plaintiff] on the use of excessive force[;] . . . the jury charge for both [assault and battery] . . . required a finding of intent, which is not required for excessive force"), *report and recommendation adopted by*, 2017 WL 2445046 (E.D.N.Y. 2017)). "The jury's finding that [Warr] did not carry his burden of proving assault [or battery] by a preponderance of the evidence thus d[oes] not mean that it found [Liberatore]

---

[9] Liberatore has repeatedly advanced this same argument throughout this litigation. He first raised the argument in connection with his motion for summary judgment. (Docket # 88-1 at 18-19 ("it cannot be said that [Liberatore's] actions were objectively unreasonable when those very actions were found to be appropriate by all levels of RPD command, as well as an independent CRB")). The district court concluded that issues of fact precluded summary resolution of the qualified immunity issue. (Docket # 102 at 16). Liberatore pressed the argument again at trial prior to closing arguments. I rejected the argument, noting that the various review determinations made clear that they rested upon fact and credibility determinations that were disputed by plaintiffs and within the province of the jury to resolve.

carried his own burden of establishing the factual predicates on which his claim of entitlement to qualified immunity is based." *Outlaw v. City of Hartford*, 884 F.3d 351, 370-71 (2d Cir. 2018); *see also Brim v. City of New York*, 2016 WL 11263170 at *3 ("[a] reasonable jury could have reached these verdicts based on the element of intent; that is, [the officer] lacked intent, which shielded him from verdicts of assault and battery, but not excessive force"). Likewise, the qualified immunity determination does not rise or fall on the degree of injury sustained by the plaintiff. *See*, *e.g.*, *Barcomb v. Kraeger*, 2016 WL 2644885, *5 (D. Conn. 2016) ("[w]hile the extent of injury suffered is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied, injury and force are only imperfectly correlated, and it is the latter that ultimately counts") (internal quotations, brackets and ellipses omitted); *Routier v. O'Hara*, 2013 WL 3777100, *11-12 (E.D.N.Y. 2013) ("the slightness of injury suffered as a result of the challenged use of force does not make that force objectively []reasonable as a matter of law[;] . . . [p]articularly where, as in this case, the alleged use of force could have resulted in serious injury, that the plaintiff avoided that fate does not alter the reasonableness [or lack thereof] of that application of force[;] . . . [f]or substantially the same reasons, the [c]ourt also rejects defendants' alternative argument that [p]laintiff's claims are barred because the officers are entitled to qualified immunity"); *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013) (same). Accordingly, I find that Liberatore is not entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, Liberatore's motion for judgment on the grounds of qualified immunity **(Docket ## 152, 153)** is **DENIED**.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August  29, 2019